IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

RONALD PENDLEBURY,

     Plaintiff,

vs.

                                    Case No.: 1:12cv104-CAS

CAROLYN W. COLVIN,[1]
Acting Commissioner of Social Security,

     Defendant.

_____/

## MEMORANDUM OPINION AND ORDER

This is a Social Security case referred to the undersigned U.S. Magistrate Judge

upon consent of the parties and reference by Chief District Judge M. Casey Rodgers.

Doc. 10. *See* Fed. R. Civ. P. 73; 28 U.S.C. § 636(c). After careful consideration of the

entire Record, the decision of the Commissioner is affirmed.

### I. Procedural Statement of the Case

On June 3, 2008, Plaintiff, Ronald Pendlebury, filed a Title II application for

Disability Insurance Benefits (DIB), alleging disability beginning October 30, 2007,

because of back problems. R. 16, 87, 111, 115. (Citations to the Record shall be by

the symbol "R." followed by a page number that appears in the lower right corner.)

_____

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on
February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure,
Carolyn W. Colvin is substituted for Michael J. Astrue as the Defendant in this case.

Plaintiff's insured status for disability benefits ended on December 31, 2012. R. 16, 111.

Plaintiff's application was denied initially and upon reconsideration. R. 16, 48-53. On November 25, 2008, Plaintiff filed a request for hearing. R. 16, 56. On June 9, 2010, Plaintiff appeared and testified at a hearing conducted by Administrative Law Judge (ALJ) Robert D. Marcinkowski. R. 27-41. Plaintiff was represented by Theodore M. Burt, an attorney. R. 16, 24, 26, 54-56. On July 6, 2010, the ALJ issued a decision denying Plaintiff's application for benefits. R. 16-23.

On August 10, 2010, Plaintiff filed a request for review and on August 11, 2010, Plaintiff's counsel requested leave to file a memorandum and supplemental medical evidence. R. 11-12. On or about December 14, 2011, (Exhibit 8E), Plaintiff's counsel submitted a memorandum and additional medical evidence that were considered, but rejected, by the Appeals Council. R. 1-2, 164-66 (Exhibit 8E). On March 28, 2012, the Appeals Council denied Plaintiff's request for review making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. R. 1-7. The Appeals Council considered the reasons Plaintiff disagreed with the ALJ's decision and stated:

Specifically, we considered the statement and contentions in your request for review and in your representative's brief dated December 14, 2011 (Exhibit 8E). The contentions do not raise any new issues of law or fact. Essentially, the contentions are directed toward the [ALJ's] evaluation of the evidence and testimony and consequently, the ultimate issue of "disability." The Appeals Council finds that the [ALJ] considered and evaluated the evidence and reached a conclusion that you are not disabled. The Appeals Council finds no basis to disturb that finding.

Therefore, the Appeals Council concludes that a basis for the Appeals Council to grant review of this case has not been presented.

Case No. 1:12cv104-CAS

We also looked at the additional evidence submitted with your request for review. Specifically, we looked at treatment records from Simed Primary Care dated September 13, 2010 to September 27, 2011; a Medical Source Statement dated January 5, 2011; records from North Regional Medical Center dated August 20, 2011 to October 18, 2011; and a treatment record from Nephrology Associated dated September 20, 2011. The [ALJ] decided your case through July 6, 2010. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or about July 6, 2010.

If you want us to consider whether you were disabled after July 6, 2010, you need to apply again. We are returning the evidence to you to use in your new claim.

If you file a new claim for disability insurance benefits within 6 months after you receive this letter, we can use August 13, 2010, the date of your request for review, as the date of your new claim. The date you file a claim can make a difference in the amount of benefits we can pay.

R. 1-2.² On May 15, 2012, Plaintiff filed a complaint for judicial review in this Court.

Doc. 1. The parties filed memoranda of law, docs. 13 and 14, which have been

considered.

## II. Findings of the ALJ

The ALJ made several findings relative to the issues raised in this appeal:

1. Plaintiff was born on February 13, 1962, and was 45 years old, which is defined as a younger individual age 45-49, as of the alleged onset date (October 30, 2007). Plaintiff has a limited education and is able to communicate in English. R. 21.

2. Plaintiff has not engaged in substantial gainful activity since October 30, 2007. R. 18.

3. Plaintiff has several "severe impairments: a back disorder and diabetes mellitus." R. 18. The ALJ considered Plaintiff's treatment for ulcers on his ankles in November 2009 and Plaintiff's complaints of headaches and left eye

---

² Plaintiff does not argue that the Appeals Council erred in not considering the submitted information. Doc. 13.

pain in May 2008. The ALJ did not include these issues on the list of severe impairments, but noted "that the residual functional capacity [RFC] adopted here more than fully accommodates any minimal limitations that the claimant may have because of these conditions." R. 18.

4. Plaintiff does "not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." R. 19. The ALJ assessed Plaintiff's back disorder pursuant to the criteria in Listing 1.00 (Musculoskeletal System) and Plaintiff's diabetes mellitus pursuant to the criteria in Listing 9.00 (Endocrine System) and determined that the medical evidence did not meet the level of severity required by these listings. R. 19.

5. Plaintiff has the RFC "to perform the full range of sedentary work as defined in 20 CFR 404.1567(a)." R. 19.

6. Plaintiff "is unable to perform any past relevant work." R. 21.

7. Transferability of jobs is not material to the determination of disability. R. 22.

8. "Considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform." The ALJ concluded: "Based on the [RFC] for the full range of sedentary work, considering the claimant's age, education, and work experience, a finding of "not disabled" is directed by the Medical Vocational Rules 201.19 and 201.20." R. 22.

9. "The claimant has not been under a disability, as defined in the Social Security Act, from October 30, 2007, through the date of this decision." R. 22.

### III. Issue to be Determined

Whether the ALJ erred when he found Plaintiff's complaints of pain not to be credible such that Plaintiff is not disabled and able to work.

### IV. Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.

42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial

evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); accord Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).[3]

"In making an initial determination of disability, the examiner must consider four factors: '(1) objective medical facts or clinical findings; (2) diagnosis of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and corroborated by [other observers, including family members], and (4) the claimant's age, education, and work history.'" Bloodsworth, 703 F.2d at 1240 (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A disability is an

---

[3] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see 20 C.F.R. § 404.1509 (duration requirement). Both the "impairment" and the "inability" must be expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212 (2002). In addition, an individual is entitled to DIB if he is under a disability prior to the expiration of his insured status. See 42 U.S.C. § 423(a)(1)(A) and (d); Torres v. Sec'y of Health & Human Servs., 845 F.2d 1136, 1137-38 (1st Cir. 1988); Cruz Rivera v. Sec'y of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986).

The Commissioner analyzes a claim in five steps. 20 C.F.R. § 404.1520(a)(4)(i)-(v):

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. Consideration

is given to the assessment of the claimant's RFC and the claimant's past relevant work. If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled. If the claimant carries this burden, however, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience. Phillips, 357 F.3d at 1237; Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

The opinion of the claimant's treating physician must be accorded considerable weight by the Commissioner unless good cause is shown to the contrary. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). This is so because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2). Conversely, "[a] statement by a medical source that [a claimant is] "disabled" or "unable to work" does not mean that [the claimant is] disabled." 20 C.F.R. § 404.1527(d)(1).

## V. Legal analysis

### A. The ALJ's credibility determination is supported by substantial evidence.

Plaintiff contends that the ALJ's credibility determination regarding Plaintiff violated the Eleventh Circuit's pain standard and, as a result, is not supported by substantial evidence. Doc. 13 at 5-16. The ALJ properly discounted Plaintiff's credibility.

### Relevant Medical Evidence Pre-Dating October 30, 2007

Plaintiff's alleged onset date of disability is October 30, 2007. R. 16, 22, 115. The following medical evidence precedes the alleged onset date, but provides needed background relevant to the merits of Plaintiff's claim of disability.

Before discussing the medical evidence, the ALJ noted that Plaintiff had received "treatment for the allegedly disabling impairments, that treatment has been essentially routine and/or conservative in nature; and sporadic in nature." R. 20. The record supports this view.

On July 30, 2002, Plaintiff reported to Eric W. Scott, M.D., that he experienced pain in his lower and middle back that began several weeks before. R. 218, 222. On August 1, 2002, Gregory A. Imperi, M.D., performed an adenosine dual isotope myocardial scan on Plaintiff and results were normal. R. 229. Dr. Imperi noted that Plaintiff had no evidence for ischemia causing an abnormal electrocardiogram; back surgery could commence without special cardiac precautions. R. 230.

On August 5, 2002, Dr. Scott performed a microdiskectomy of Plaintiff's lumbar

spine on the left side at L4-5 and the right side at L5-S1 to repair lumbar disc herniations. R. 216-17, 222-23. On September 6, 2002, Plaintiff reported that his previous pain symptoms had resolved since the surgery and he was not currently requiring any narcotics or muscle relaxants. R. 215. Dr. Scott noted that Plaintiff "is employed as a plumber and should be able to return to work in a light-duty capacity at this time." R. 215.

On January 26, 2004, Plaintiff advised Dr. Scott by telephone that he had been doing well until six weeks before "when he had the insidious onset of recurrent pain in the right leg which has become severe and intense and radiates down his leg." R. 213. He had been to the emergency room twice and most recently on January 24, 2004, "where an MRI was obtained demonstrating a recurrent disc herniation on the right at L5-S1 with an extruded free fragment. He denies weakness or bowel/bladder symptoms," but requested to follow-up with Dr. Scott. R. 213-14.

On August 27, 2004, Dr. Scott wrote a letter to "Vocational Rehab" in Lake City, Florida, in response to a request for his "neurological consultation." R. 210-12. Dr. Scott provided a medical history, the results of a physical and neurological examination, and a description of the radiographic studies. R. 210-11. Dr. Scott's impressions were: probable recurrent HNP right L5-S1; diabetic peripheral neuropathy; and tobacco abuse. R. 211. Dr. Scott's recommendation/plan included encouraging Plaintiff to discontinue smoking; obtaining a current MRI LS-spine with and without gadolinium; requesting an EMG nerve conduction study of both lower extremities with Jesse A. Lipnick, M.D., to document radiculopathy versus peripheral neuropathy.

Dr. Scott prescribed Lortab. Plaintiff was encouraged to diminish his Ibuprofen use and to follow-up for discussion of surgical treatment options. R. 211.

On September 17, 2004, Plaintiff had a MRI scan of the lumbar spine. R. 208-09. Findings and impressions are noted. R. 208-09. On October 6, 2004, Dr. Scott noted that the MRI was not performed as requested and "is essentially worthless as a result. The patient does have a L5-S1 disc "bulge" with evidence of prior surgery. There is soft tissue thickening but we cannot differentiate between scar tissue or recurrent disc herniation." Dr. Scott's impression was "probable recurrent HNP right L5-S1, but MRI is not diagnostic." R. 206. Dr. Scott repeated his request that Plaintiff have an MRI with a closed scanner with and without gadolinium, which was imperative to distinguish between fibrosis and recurrent disc herniation. R. 206. Dr. Scott recommended that Plaintiff keep his EMG appointment with Dr. Lipnick and follow-up with Dr. Scott "for definitive treatment planning." R. 206.

On September 30, 2004, Plaintiff had an initial vocational evaluation with Dr. Lipnick. R. 173-77. Plaintiff reported numbness in his right leg and sometimes in his left leg and erectile insufficiency and bowel dysfunction over the past four months. R. 173-74. After examination, Dr. Lipnick's impressions were right L5 radiculopathy; distal symmetric sensory polyneuropathy consistent with history of diabetes mellitus; and 2 pack per day diabetic smoker. R. 176. He agreed with Dr. Scott's assessment that Plaintiff needs EDX testing of the right lower extremity (RLE). He urged Plaintiff to seek help from a PCP as he currently regulated his diabetes with insulin "'when [he] needed it' and smokes 2 packs of cigarettes per day. He says he cannot afford a PCP,

but will go to the Gilchrist County Health Department for medical consultation." R. 176.

On October 11, 2004, Plaintiff was seen at Dr. Lipnick's clinic for nerve conduction studies and electromyography. R. 178-81, 200-05. Dr. Lipnick's impressions were: abnormal study; chronic right L5 radiculopathy consistent with possibility of spinal stenosis secondary to disc herniation as described in the MRI from Gainesville Open MRI (9/17/04); distal symmetric sensory motor polyneuropathy consistent with a history of diabetes mellitus (this neuropathy involves both myelin and axonal tissue); and consider LE arterial claudication given this patient's history of smoking 2 packs of cigarettes per day with diabetes mellitus. R. 180, 202.

On October 13, 2004, Plaintiff had an MRI scan of the lurnbar spine with contrast at the Gainesville Open MRI. R. 198-99. On October 28, 2004, Dr. Scott reviewed the results with Plaintiff during a follow-up visit. R. 197. Dr. Scott believed Plaintiff developed a recurrent disc herniation at right L5-S1 and recommended a repeat microdiskectomy at this location. R. 197. Alternatives were discussed. R. 197. On November 2, 2004, Dr. Scott advised Vocational Rehab that Plaintiff was scheduled for surgery soon and that as a plumber he would be out of work for one to two months after surgery and then return to light-duty with limited bending, twisting, and lifting. Restrictions would be gradually released as time went on, although Dr. Scott noted that "it is possible that he may not be able to return to this line of work completely or full time and may need additional job retraining." R. 196.

On January 11, 2005, Dr. Scott performed a repeat microdiskectomy, right L5-S1. R. 192-93, 220-28. Plaintiff was discharged and prescribed Percocet and Robaxin.

Dr. Scott noted that Plaintiff had also been seen by Dr. Reif for his COPD, hypertension and obesity and was considered stable at this time. R. 224. Plaintiff returned to Dr. Scott on January 18, 2005. The incision was well-approximated with no redness or swelling. Plaintiff tolerated the surgery well. R. 191.

On February 11, 2005, Plaintiff had a follow-up visit with Dr. Scott, complaining of pain to the right of the incision, but denying radiating pain, numbness/tingling. R. 190. Dr. Scott recommended Plaintiff begin to exercise; return to full duty "(per request with a weight restriction of 50 lb lifting)"; and return for a visit with Dr. Scott in three months. R. 190.

On April 11, 2005, Plaintiff returned for a follow-up visit reporting that initially his leg pain had resolved and he was doing quite well; however, he returned to work and within a week had recurrent pain in the right leg. Dr. Scott noted "there is positive SLR on the right at 30-40 degrees and on the left at 60-70 degrees. [Plaintiff] notes that he has to lean mainly to the left to keep pressure off of the right buttock. The incision is well heeled but he has a moderate degree of myospasm throughout the area of the incision." R. 189. Dr. Scott recommended another MRI L/S spine with and without gadolinium and further noted the patient desires to continue working as much as he can with the light-duty restrictions previously outlined. He is on Lorcet and Robaxin which we can refill as needed." R. 189.

On April 26, 2005, Plaintiff had a MRI of the lumbar spine with and without contrast. R. 185-86. There was no significant change in the post-surgical findings on the left at L4-5 and on the right at L5-S1 as compared to the previous examination from

Case No. 1:12cv104-CAS

October 13, 2004. R. 186. What appeared as a possible free disc fragment on the previous examination was felt to represent a focally thickened, inflamed segment of the right traversing S1 nerve root surrounded by epidural fibrosis. R. 186. Plaintiff returned on April 28, 2005, for additional gradient-echo T1-axial and sagittal images through the operative Level of L5-S1. A finding is noted that was "somewhat suspicious for a tiny disk fragment." R. 188. On May 26, 2005, Plaintiff returned to Dr. Scott who could not tell if there was a disc fragment. Plaintiff desired to avoid further surgery and Dr. Scott agreed. Dr. Scott opined that Plaintiff would benefit from a course of physical therapy and that a referral would be made. Dr. Scott noted: "He may continue working as much as he can with light duty restrictions, otherwise." R. 184.

On September 2, 2006, Plaintiff had an examination of his left shoulder that appeared to produce normal results. R. 232.

There are no patient records between October 2006 and April 2008. Plaintiff has not engaged in substantial gainful employment since October 30, 2007, the alleged onset date. R. 16, 18, 22.

**Relevant Medical Evidence Post-Dating October 30, 2007**

On May 18, 2008, Plaintiff complained of headache and left side pain. He had a CT brain scan without contrast. The impression was: "chronic appearing, left maxillary, and left ethmoid sinusitis, which could account for patient's left eye pain. Otherwise, no other acute intracranial findings." R. 231.

On July 23, 2008, Plaintiff was seen at the Doctors Imaging Group for an x-ray of Plaintiff's "AP and Lateral Lumbar Spine." R. 239. A comparison was made of the

January 3, 2005, lumbar spine report. *See* R. 195. The impression was: moderate L5-

S1 disc space narrowing; bilateral facet hypertrophy of the lumbosacral junction; mild

hypertrophic spurring change at L1-L2, L2-L3, L3-L4, and L5-S-1. R. 239.

On July 23, 2008, Plaintiff was also examined by Robert A. Greenberg, M.D., a

Diplomate of the American Board of Internal Medicine and Diplomate of the American

Board of Pulmonary Diseases. R. 241. Plaintiff described experiencing low back pain

and surgery in 2002, and "got good relief" for approximately two years, until 2004 when

he required a second surgery.

> He got good relief again until May of 2008 when he lifted a heavy pot of potatoes,
> working as a cook, and re-injured his back and since that time has had constant
> lumbar pain that radiates into the right leg, aggravated by bending and lifting. He
> also states that he cannot sit for more than forty five minutes at a time. He takes
> over the counter Tylenol without any relief but is on no prescription medications
> for his back pain. He claims that he has been unable to return to his job as a
> restaurant cook since re-injuring his back in May 2008.

R. 241. Plaintiff reported no other major medical illnesses, injuries, or surgery and

Dr. Greenberg's review of systems was unremarkable. R. 241.

Dr. Greenberg's examination of Plaintiff's extremities revealed the following:

> There was lumbar pain climbing onto and off of my examination table; however,
> no lumbosacral spasm was present. There was a healed lumbosacral scar.
> There was decreased ROM [range of motion] of the lumbar spine and right hip.
> There was full ROM of all the joints. There was positive straight leg raising pain
> on the right at 15 degrees and on the left at 30 degrees. No motor, sensory, or
> reflex abnormalities were noted. He walked with a right leg limp but did not
> require any assisting device for ambulation. He had difficulty tandem walking
> and was unable to walk on his heels or toes and could not stoop. Grip strength
> and fine manipulation were normal.

R. 241-42. Dr. Greenberg's impressions were: hypertension; severe low back pain,

probably secondary to lumbar disc disease; and probable osteoarthritis of the right hip.

R. 242. Dr. Greenberg completed a ROM report. R. 243-44.

Dr. Greenberg examined Plaintiff on October 14, 2008. R. 248. In addition to what was noted as a result of the July 23, 2008, examination with Dr. Greenberg, Plaintiff had great difficulty standing or walking for more than 15 minutes at a time. He was not taking any medications, including over-the-counter medications for his back pain. Dr. Greenberg noted that Plaintiff was not able to return to his job as a restaurant cook since May of 2008. R. 248. Plaintiff had decreased ROM in his lumbar spine and right hip; full ROM of all the joints; severe lumbar pain climbing onto and off the examination table, but no lumbosacral spasm present; positive straight leg raising pain on the right at 15 degrees and on the left at 30 degrees; and no motor, sensory, or reflex abnormalities were noted. Plaintiff was again unable to walk on his heels or toes and could not stoop; had difficulty tandem walking; but grip strength and fine manipulation were normal. No evidence for active, inflammatory arthritis was present. R. 248. Dr. Greenberg completed another ROM report and the degrees of motion for the lumbar spine and hip were reduced. R. 250-51. Dr. Greenberg had the same impressions. R. 249; see R. 242.

The ALJ referred to Dr. Greenberg's patient notes and "assigned significant weight to [his] opinion because of his board certifications . . . and because his opinion is consistent with the medical evidence of record." R. 20.

On September 8, 2008, Plaintiff was examined at the Trenton Medical Center, Inc. R. 246. Plaintiff wanted to establish care and discuss pain issues. R. 246.

On October 30, 2008, State agency medical consultant Eric Puestow, M.D.,

completed a physical RFC assessment. R. 253-60. As noted by the ALJ, Dr. Puestow opined that Plaintiff could work at the light exertional level limited by only standing and walking three to four hours ("stand/walk 2-4 hours," R. 254); limited pushing and pulling on the right; never climb ladders, ropes or scaffold; and avoid concentrated exposure to hazards both machinery and heights. R. 254-57.

The ALJ assigned little weight to Dr. Puestow's opinion because it was not entirely consistent with the medical evidence of record. R. 20-21.

On February 6, 2009, Nilger Malpartida, M.D., a family practitioner, examined Plaintiff for diabetes mellitus and low back pain. R. 261-64. Blood work revealed that Plaintiff's blood sugar was extremely elevated and Dr. Malpartida advised Plaintiff to seek treatment for this condition at another facility. R. 262, 278.

Plaintiff underwent treatment at Southeastern Primary Care (Southeastern) in Chiefland, Florida, from February 2009 through November 2009. R. 267-84. On February 18, 2009, Plaintiff presented to Southeastern for treatment of his elevated blood sugar and back pain. R. 278. William J. Mott, D.O., noted that Plaintiff had a decreased ROM with bilateral muscle spasm in the lumbar area. Regarding Plaintiff's extremities, Plaintiff had no significant degenerative changes, although it is noted Plaintiff was having decreased ROM of all extremities with bilateral leg raises. R. 279. Dr. Mott prescribed Amaryal for Plaintiff's elevated blood sugar and Percocet. Dr. Mott gave Plaintiff a prescription for a disabled parking permit. R. 279.

On March 5, 2009, Dr. Mott examined Plaintiff and prescribed the same medications and instructed Plaintiff to return for treatment in two months; however, it

appears that Plaintiff did not return for treatment until the following August. R. 275-77.

On August 7, 2009, Plaintiff had edema in his lower extremities, but otherwise had normal sensation and normal deep tendon reflexes. Plaintiff had a decreased ROM. Percocet and Septra DS were prescribed. R. 276. Dr. Mott noted that Plaintiff was unable to work because of diabetic neuropathy. Back pain and peripheral neuropathy are noted. R. 275.

On September 15, 2009, Plaintiff had a CT with contrast of his abdomen and pelvis. R. 283. Plaintiff had a "benign pseudocyst" in the tail of his pancreas and a fatty infiltration of a mildly enlarged liver. R. 283-84.

On October 8, 2009, Plaintiff had decreased sensation and Dr. Mott noted that Plaintiff was disabled due to diabetes. Back pain and peripheral neuropathy are noted. Percocet is prescribed. R. 273-74.

On November 12, 2009, Plaintiff complained of a lesion on his lower left extremity. R. 271. Dr. Mott prescribed an antibiotic. Plaintiff did not complain of back pain. R. 271-72. Plaintiff returned on November 16, 2009, for cleaning of his lesion and Dr. Mott prescribed a second antibiotic. Plaintiff did not complain of back pain. R. 269-70. Plaintiff returned on November 18, 2009, for a check-up of his wound. R. 267. He continued to have edema in his lower extremities and claudication.[4] R. 267. He did not

---

[4] Claudication means: "limping or lameness. intermittent c. a complex of symptoms characterized by pain, tension, and weakness in a limb when walking is begun, intensification of the condition until walking becomes impossible, and disappearance of the symptoms after a period of rest. It is caused by reversible muscle ischemia that occurs in occlusive arterial disease of the limbs. Called also *Charcot syndrome* and *angina cruris*." Dorland's Illustrated Med. Dictionary 369 (32d ed. 2012).

complain about his back. R. 268.

The ALJ

assigned little weight to the opinion of Dr. Moti [sic] because his opinion was not entirely consistent with the medical evidence. Dr. Moti's [sic] opinion that the claimant could not work was quite conclusory, providing very little explanation of the evidence relied on in forming that opinion. The doctor's own reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled, and the doctor did not specifically address this weakness, except to write that the claimant had diabetic neuropathy. In addition, the determination of disability is a determination reserved for the Commissioner.

R. 20.

### Plaintiff's Credibility

The ALJ summarized Plaintiff's hearing testimony:

At the hearing, the claimant testified that he could not work because of his uncontrolled diabetes and numbness in his lower legs as a result of his back disorder. The claimant had surgery on his back in 2004 and was told that he had epidural fibrosis and neuropathy from his diabetes. The claimant reported that he could lift less than ten pounds, could stand ten to 15 minutes and then he loses his balance, he could walk a maximum of 50 yards. He drives his wife to the grocery store and sits on the bench while she shops. He did no household chores. He had difficulty bending over, stooping and crawling. Claimant reported that he spent seven to eight hour[s] each day lying down in bed.

R. 20; *see* R. 28-41 (Plaintiff's hearing testimony).

After summarizing Plaintiff's testimony and before summarizing the medical

evidence, the ALJ determined "that the claimant's medically determinable impairments

could reasonably be expected to cause the alleged symptoms, however, the claimant's

statements concerning the intensity, persistence and limiting effects of the symptoms

are not credible to the extent they are inconsistent with the above [RFC] assessment,"

that is that Plaintiff has the RFC to perform the full range of sedentary work. R. 19-20.

Case No. 1:12cv104-CAS

After summarizing the medical evidence, the ALJ makes the following credibility

determination:

One strong indication of the credibility of an individual's statements is their
consistency, both internally and with other information in the case record. This
consistency is lacking in the record before the undersigned. As outlined above,
the claimant['s] essential allegation is that the claimant's impairments are so
significant that he cannot perform work activity. Despite these allegations, the
claimant's treatment notes indicated that the claimant was able to drive his car on
a regular basis. In addition, the record does not contain any opinions from
treating or examining physicians indicating that the claimant has limitations that
preclude him from completing a normal workweek on a regular and continuous
basis, or even has limitations greater than those determined this decision. The
record reflects significant gaps in the claimant's history of treatment in 2007 and
2010. Despite the complaints of allegedly disabling symptoms, there have been
significant periods of time since the alleged onset date during which the claimant
has not taken any medications for those symptoms. (Exhibits 6F and 8F).[5]
Finally, there is evidence that the claimant has not been entirely compliant in
following doctor's orders, which suggests that the symptoms may not have been
as limiting as the claimant has alleged in connection with this application. The
claimant continues to smoke over a pack of cigarettes each day, although he has
been asked to stop by various medical providers for years. (Exhibit 6F).

The undersigned specifically notes that the claimant enjoyed a consistent work
history beginning in 1978 through 2008.

In summary, after carefully considering the documentary evidence in conjunction
with the claimant's appearance and testimony at the hearing, the undersigned
concludes that the claimant's subjective complaints are not as severe or limiting
as alleged and would not preclude him from performing work at the [RFC] noted
above on a regular and continuing basis.

R. 21.

The credibility of the claimant's testimony must be considered in determining if

the underlying medical condition is of a severity which can reasonably be expected to

produce the alleged pain. Lamb v. Bowen, 847 F.2d 698, 702 (11th Cir. 1988). After

---

[5] Exhibits 6F and 8F are Dr. Greenberg's patient notes. R. 241-45, 248-52.

considering a claimant's complaints of pain, an ALJ may reject them as not credible.

See Marbury, 957 F.2d at 839 (citing Wilson v. Heckler, 734 F.2d 513, 517 (11th Cir.

1984)). If an ALJ refuses to credit subjective pain testimony where such testimony is

critical, the ALJ must articulate specific reasons for questioning the claimant's credibility.

See Wilson, 284 F.3d 1225. Failure to articulate the reasons for discrediting subjective

testimony requires, as a matter of law, that the testimony be accepted as true. *Id.*

Pain is subjectively experienced by the claimant, but that does not mean that

only a mental health professional may express an opinion as to the effects of pain.

One begins with the familiar way that subjective complaints of pain are evaluated:

> In order to establish a disability based on testimony of pain and other
> symptoms, the claimant must satisfy two parts of a three-part test
> showing: (1) evidence of an underlying medical condition; and (2) either
> (a) objective medical evidence confirming the severity of the alleged pain;
> or (b) that the objectively determined medical condition can reasonably be
> expected to give rise to the claimed pain.

Wilson, 284 F.3d at 1225. See 20 C.F.R §§ 404.1529 (explaining how symptoms and

pain are evaluated); 404.1545(e) (regarding RFC, total limiting effects). This is

guidance for the way the ALJ is to evaluate the claimant's subjective pain testimony

because it is the medical model, a template for a treating physician's evaluation of the

patient's experience of pain.

The ALJ may consider a claimant's daily activities when evaluating subjective

complaints of disabling pain and other symptoms. Macia v. Bowen, 829 F.2d 1009,

1012 (11th Cir. 1987); 20 C.F.R. § 404.1529(c)(3)(i). *But see* Lewis v. Callahan, 125

F.3d 1436, 1441 (11th Cir. 1997) ("participation in everyday activities of short duration,

such as housework or fishing" does not disqualify a claimant from disability).

The ALJ determined that Plaintiff has the RFC to perform a full range of

sedentary work as defined in 20 C.F.R. § 1567(a) that provides:

(a) Sedentary work. Sedentary work involves lifting no more than 10 pounds a
time and occasionally lifting carrying particles like docket files, managers, and
small tools. Although I sedentary job is defined as one which involves sitting, a
certain amount of walking and standing is often necessary in carrying out job
duties. Jobs are sedentary if walking and standing required occasionally and
other sedentary criteria are met.

Here, the ALJ's RFC determination is based on his review of the medical evidence and
assessment of Plaintiff's credibility.

Plaintiff's medical journey from 2002 forward is succinctly summarized by

Dr. Greenberg on July 24, 2008, and October 14, 2008, as set forth above. R. 241,

248. Plaintiff's lumbar surgery in 2002 and second lumbar surgery in 2004 is well-

described in the record, including a note by Dr. Greenberg that Plaintiff "got good relief

again until May of 2008 when he lifted heavy pot of potatoes . . . and re-injured his

back." R. 241, 248. Plaintiff presented to Dr. Greenberg in July 2008 and again in

October 2008 and Dr. Greenberg's notes are summarized by the ALJ and quoted

above. R. 241-44, 248-51; see R. 20. Even though Plaintiff had a decreased ROM in

his lumbar spine and right hip that decreased between visits, Dr. Greenberg also found

that Plaintiff had full ROM in all other joints, no lumbar muscle spasms, and no sensory

or reflex abnormalities. He also did not opine that Plaintiff cannot perform the physical

requirements of sedentary work. R. 241, 248. As for medications, Dr. Greenberg noted

that Plaintiff was not currently on any medication, including over the counter

medications for his back pain. R. 241, 248; *see* R. 21 ("Despite the complaints of allegedly disabling symptoms, there have been significant periods of time since the alleged onset date during which the claimant has not taken any medications for those symptoms. (Exhibits 6F and 8F)".)[6]

After his last visit with Dr. Greenberg in October 2008, Plaintiff was treated by Dr. Malpartida on February 6, 2009, for his diabetes mellitus and low back pain. R. 261-64; *see* R. 20. Plaintiff's next treatment regimen was with Dr. Mott from February 2009 until November 2009. R. 267-84; *see* R. 20. Dr. Mott examined Plaintiff and prescribed medications in February and March 2009. R. 275-79. Plaintiff returned on August 7, 2009, R. 275-76, when Dr. Mott noted that Plaintiff was unable to work because of diabetic neuropathy, and again on October 8, 2008, with the same comment regarding disability, R. 273-74. (On March 5th, Dr. Mott told Plaintiff to return for treatment in two months, but he did not. R. 275-77.) Plaintiff complained of back pain in February and March, although Dr. Mott did not opine that Plaintiff was disabled because of his low back issues. Although Dr. Mott found in February 2009 that Plaintiff had reduced ROM of all extremities with bilateral straight leg raises and lumbar muscle spasms, he also noted that Plaintiff had no significant degenerative changes. R. 279. Subsequently, on November 12, 16, and 18, 2009, Plaintiff presented to Dr. Mott for treatment of a skin lesion, but did not complain about back pain or related limitations,

---

[6] An ALJ may consider the claimant's lack of medication or lack of strong medication in finding that allegations of disabling pain are not credible. *See* Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (explaining ALJ properly discounted complaints of disabling pain where, among other factors, claimant took only aspirin, Motrin, Tylenol, and Darvocet).

although Dr. Mott mentions that Plaintiff continued to have edema in his lower
extremities and claudication. R. 267-72.

The ALJ noted that Plaintiff's "treatment has been essentially routine and/or
conservative in nature; and sporadic in nature." R. 20. This finding is supported by
substantial evidence, detained above, regarding treatment of Plaintiff's back pain and
treatment for his diabetes. *See* 20 C.F.R. § 404.1529(c)(3)(v).

Furthermore, as explained by the ALJ, Plaintiff made inconsistent statements that
cast some doubt upon the credibility of his subjective complaints. R.21; *see* 20 C.F.R.
§ 404.1529(c)(4). For example, Plaintiff did not stop working in October 2007 because
of his allegedly disabling back impairment. Rather, Plaintiff stated that he was laid-off
from his job. Plaintiff stated that it was not until April 2008, that his injury first interfered
with his ability to work, although on the same page of a June 19, 2008, Disability
Report, Plaintiff stated that he became unable to work on October 30, 2007. R. 115.
Plaintiff testified that he applied for jobs after the alleged onset date, such as with
Burger King, and "[t]hey wouldn't even give [him] a job." R. 33. He also worked for a
couple of weeks as a prep-cook for Pete's Steakhouse in and around 2008, but could
not lift anything. R. 32. Plaintiff also testified that he spends seven to eight hours a day
in bed due to his pain, but this was not noted by his treating physicians. R. 20, 38.
(Other complaints such as not being able to stand for ten to 15 minutes, losing his
balance, inability to stoop, R. 37-38, were noted, however. R. 21, 241, 248.).

The ALJ found Plaintiff's complaints partially credible and, in deference to
Plaintiff, limited him to performing sedentary work. *See* <u>Simmonds v. Heckler</u>, 807 F.2d

54, 58 (3d Cir. 1986). The ALJ explained the inconsistencies upon which he relied in finding Plaintiff's subjective complaints less than totally credible. Substantial evidence supports the ALJ's credibility assessment of Plaintiff.

**VI. Conclusion**

Plaintiff has the burden to prove he is disabled. Moore, 405 F.3d at 1211. The record does not support Plaintiff's assertion that he was unable to engage in any substantial gainful activity due to a medically determinable impairment that can be expected to last for a continuous period of not less than 12 months. See 42 U.S.C. §§ 416(i) and 423(d)(1)(A).

Considering the record as a whole, the findings of the ALJ are based upon substantial evidence in the record and the ALJ correctly followed the law.

Accordingly, pursuant to the fourth sentence in 42 U.S.C § 405(g), the decision of the Commissioner to deny Plaintiff's application for Social Security benefits is **AFFIRMED**.

**DONE AND ORDERED** at Tallahassee, Florida, on April 11, 2013.

> **s/ Charles A. Stampelos**
> **CHARLES A. STAMPELOS**
> **UNITED STATES MAGISTRATE JUDGE**

Case No. 1:12cv104-CAS